THE GREENPOINT SUGAR COMPANY Respondent, *v.* THE KINGS COUNTY MANUFACTURING COMPANY, EDGAR TUCKER, HENRY WHITIN and others, Appellants.

*Manufacturing corporations — chap. 40 of 1848 — right to mortgage — right to take back mortgage on sale of land — chap. 517 of 1864 — form of assent required by — time of filing of — number of stockholders whose assent is required.*

The act, chapter 517 of 1864, authorizing manufacturing corporations to execute mortgages, with the written assent of two-thirds of their stockholders, prescribes no particular form in which such assent is to be given. Any instrument is sufficient, which contains reasonable evidence of the consent of two-thirds of the stockholders, and which contains enough to identify the mortgage to which such assent is intended to be given.

Such assent is sufficient, even though the amount, to secure which the mortgage is to be given, is not specified therein.

Parol evidence is admissible to identify the mortgage, when the description of it in the written instrument is imperfect.

*Quære*, whether such evidence would be admissible for that purpose, when the description was false.

The provision of the statute requiring the consent of the stockholders owning at least two-thirds of the capital stock, refers to the stock issued, or agreed to be issued, or actually subscribed for, and not to the nominal amount to which the capital stock is limited in the certificate of incorporation.

The only effect of the section of the statute providing that the mortgage shall be valid provided that the written assent "shall first be filed," is to prevent the mortgage from taking effect as a valid instrument until after the filing of the assent.

*Semble*, that even if the assent were not executed or filed until after the recording of the mortgage, the latter would become valid and effective from the time of such filing. (Per TALCOTT, J.)

It was stipulated, in this case, that the assent was filed with the county clerk on the fourth of November, and it appeared from the certificate of the clerk that the mortgage was recorded on that day, at 3.15 P. M. *Held*, that the legal presumption was that the assent was filed at the earliest possible moment, and therefore prior to the time of recording the mortgage.

Where a corporation, created under the act of 1848, is desirous of selling a portion of its real estate to another corporation, it may, if necessary, agree to advance money to the latter to be employed in the erection of buildings upon such land, and take a mortgage for the purchase-price of the land sold, and the money so advanced.

APPEAL from a judgment of foreclosure and sale, entered upon the trial of this action by the court without a jury. The action was brought to foreclose two mortgages given by the defendant corporation to the plaintiff, one for $44,244.24, dated and recorded November 4, 1869, and the other for $7,407, dated February 10, 1872, and recorded March 1, 1872. The latter was given to secure an amount due to the plaintiff for taxes on the property, interest on the first mortgage, etc.

*Everett P. Wheeler*, for appellants Kings County Manufacturing Co. and Tucker.

*Hamilton Odell*, for appellant Whitin.

*Lucien Birdseye* and *Richard S. Emmett*, for the respondents. The statute of May 2, 1864, is to be considered liberally, and according to its intent. (*Holmes* v. *Carley*, 31 N. Y., 289 ; *Chamberlain* v. *Western Trans. Co.*, 45 Barb., 218.) At common law, a corporation, like an individual, has an absolute right to mortgage its property. Any statutory limitation of such a right is in derogation of the common law, and is to be limited and construed strictly, and all exceptions thereto are to be construed liberally, and so as to promote the rights and interests of the parties. (*Whitney* v. *Union Trust Co. of N. Y.*, in Commission of Appeals, May, 1875, MS.; *Central Gold Mining Co.* v. *Platt*, 3 Daly, 263.) The accidental omission to insert in the blank left for that purpose, in the assent, the precise amount for which the bond was to be given, did not nullify the assent to the giving of the bond, nor the assent to the giving of the mortgage to secure the bond whose execution was thus assented to. (*Chauncey* v. *Arnold*, 24 N. Y., 330; *Texira* v. *Evans*, referred to therein; 4 T. R., 320, S. C.; *Woolley* v. *Constant*, 4 Johns., 60; *Ex parte Decker*, 6 Cow., 60; *Knapp* v. *Maltby*, 13 Wend., 587.) The subject to which the assent of the stockholders in question referred, viz., the precise mortgage in suit, of November 4, 1869, was fully proved in this case, was shown to have been known to the subscribers to that assent, and to have been agreed to by them. The general rule, as established by numerous cases, is that such evidence is always admissible to ascertain the nature and qualities of the subject to

which an instrument refers. (Greenl. on Ev., § 286–288; *Cary* v. *Thompson*, 1 Daly, 35; *Galen* v. *Brown*, 22 N. Y., 37; *Fish* v. *Hubbard*, 21 Wend., 651; *Pritchard* v. *Hicks*, 1 Paige, 270; *Rowe* v. *Thompson*, 15 Abb. Pr., 377; *Tibbs* v. *Morris*, 44 Barb., 138; *Sale* v. *Darragh*, 2 Hilt., 184; *McNulty* v. *Prentiss*, 25 Barb., 204; *Boyd* v. *Brotherson*, 10 Wend., 93; *Clute* v. *Small*, 17 id., 238; *Judd* v. *Ensign*, 6 Barb., 258; *Ex parte Homley*, 3 Bradf., 420.)

TALCOTT, J.:

The main question in this case is as to the validity of the mortgage of November 4, 1869, for $44,244.24. This mortgage was made by the Kings County Manufacturing Company to the plaintiff, to secure the payment of a balance due from the Manufacturing Company for the purchase-money of the land, and money advanced to erect the buildings on the premises. purchased by the Manufacturing Company of the plaintiff, for the purpose of establishing thereon the manufactory of the Kings County Company. By the act to authorize the formation of corporations for manufacturing purposes, under which the Kings County Company was formed (Laws of 1848, chap. 40), such companies were expressly prohibited from giving any lien upon their corporate property, by mortgage or otherwise. This act was amended by chapter 517 of the Law of 1864, whereby it is provided that such corporations may secure any debt heretofore contracted, or which "may be contracted by it in the business for which it was incorporated, by mortgaging all or any part of the real estate of such corporation, and every mortgage so made shall be as valid to all intents and purposes as if executed by an individual owning such real estate; provided, that the assent of the stockholders, owning at least two-thirds of the capital stock of such corporation, shall first be filed in the office of the clerk of the county where the mortgaged property is situated." The question as to the validity of the mortgage of November 4th, 1869, arises upon the construction of the amending act of 1864. It is claimed by the defendants: First, that no such assent as the statute requires was given; second, that it was not filed before the mortgage was executed; third, that it was not assented to by the owners of two-thirds of the capital stock. A written assent, signed

by stockholders claiming to be the owners of more than two-thirds of the company, was signed, in the words following: "Know all men by these presents, that we the undersigned, stockholders of the Kings County Manufacturing Company, and owning more than two-thirds of the capital stock of the said company, do hereby severally consent that the said Kings County Manufacturing Company execute to the Greenpoint Sugar Company a bond conditioned for the payment of ———, and a mortgage to secure the same upon the lands and premises by them owned, situate in the city of Brooklyn, county of Kings, in the State of New York, or any part thereof. Dated October 21, 1869."

The defendants deny that this assent is in a form sufficient to satisfy the statute, inasmuch as the amount of the bond to be secured by the mortgage is not specified therein. The statute prescribes no form in which the assent shall be given. The object of the act is the protection of the stockholders, and to guard against the power of the officers of the company to incumber its property without the consent of at least two-thirds of the stockholders. The written assent is the evidence required by the statute, and as no particular form is specified or required, any form which they may choose to adopt, and which contains reasonable evidence of the consent of two-thirds of the stockholders to the making of the mortgage in question, is sufficient. If the instrument contains enough to specify and identify the mortgage to which the stockholders intended to give their assent, it is sufficient. In this case it seems that the amount of the condition of the bond was left in blank, owing to the uncertainty as to the precise amount which would be due the Sugar Company, on a settlement then about to be made of the accounts between the two companies. I do not see why the stockholders might not assent to the making of a mortgage without specifying the precise amount. Of course, in order to be valid, the mortgage must be founded on the consideration mentioned in the statute. True, a consent to the execution of a mortgage for the amount of an unascertained indebtedness, exposes the corporation to the risk of the fraud of its officers, as an individual, is exposed to the fraud of his agent, who intrusts the latter with a blank promissory note or check. The instrument specifies the mortgage, and the statute supplies the additional fact

that it is to be for a debt contracted by the mortgagor in the business for which it was incorporated. It seems to me to be the same in legal effect, as though the instrument had recited the fact, that the parties signing it assented that the Kings County Manufacturing Company should make a mortgage to the Sugar Company to secure the payment of the indebtedness, whatever it might amount to, of the former to the latter company, and I do not doubt but that such would be a sufficient assent to comply with the amendment of 1864. The statute prescribes no language in which the assent shall be couched, and no particulars which shall be stated in it. It is not required to be acknowledged, proved or recorded, nor is it to have any effect as evidence, or by way of notice, upon subsequent grantees or incumbrancers. It has no force except, when duly proved, as evidence of the assent required by the statute. The filing in the clerk's office is apparently only for the benefit of the mortgagee, or his assigns, to preserve the evidence of the assent which might otherwise be forgotten, lost or destroyed. Those who signed the instrument in this case, unquestionably assented to the making of some mortgage. It is a mere question of identity. The defendants insist, not that the description in the instrument of assent is false, in which case it might be doubtful if it could be corrected by parol evidence, but that the description is imperfect. And on the question thus raised as to the identity of the mortgage in fact executed, and that referred to in the assent, I think the parol evidence, so far as it was of any importance, was admissible. I think, therefore, the instrument of assent was, in form, a sufficient compliance with the act of 1864. It was provided in the articles of association of the Kings County Manufacturing Company, that the capital stock of the corporation should consist of 2,500 shares of $100 each. But in point of fact only 2,000 shares had been issued or taken, or agreed to be taken. The two-thirds of the capital stock referred to in the act of 1864, must be held to refer to the capital stock issued, or agreed to be issued or actually subscribed for, instead of the mere nominal amount to which the capital stock is limited in the certificate of incorporation. The object of the act of 1864, is to prevent the real estate of such corporations being incumbered, except by the formal consent of two-thirds of those interested. The amount of the

capital stock named in the certificate of incorporation is merely a limitation upon the amount which can be issued. Such of the stock as has not been issued, or agreed so to be, or even subscribed for, belongs to nobody, has no existence as capital stock within the meaning of the act of 1864, and is not capable of representation in a vote of the stockholders. The whole intent of the act of 1864 is satisfied by requiring the assent to a mortgage, of two-thirds of the actual stockholders. The defendants claim that as to 109 shares of stock standing on the books in the name of Clinton Furbish, as a part of 234 shares standing to his credit, that the certificate therefor had never been delivered to him, and that there was no proof that he had ever subscribed or paid for the same; in fact, that the said 109 shares were no part of the actual existing outstanding shares of the capital stock of the company. If the views hereinbefore taken, as to what constitutes the capital stock of the company within the meaning of the act of 1864, are correct, it becomes unnecessary to examine as to whether the finding of the court as to these 109 shares is supported by the evidence or not, as the finding becomes wholly immaterial. The actual existing stock of the company being only 2,000 shares, 1,334 shares constituted two thirds thereof. The amount held by the parties who signed the assent, as appeared by the stock ledger, was 1,696 shares, deducting the 109 shares from the amount credited to Clinton Furbish, and as to which the title is questioned, there still remain represented by the signers of the assent more than two-thirds of the actual capital stock of the company, capable of representation. It is objected by the defendants that the assent was not filed in the office of the county clerk before the execution of the mortgage in question, while the statute requires the assent to be "first filed." The facts are that the assent dated on the twenty-first day of October was signed by all the signers between that time and the date of the execution of the mortgage. The assent was delivered to the counsel of the mortgagee with the mortgage, and was sent to the clerk of Kings county at the same time with the mortgage. The provision of the act of 1864 is, that "every mortgage so made, etc., shall be as valid to all intents and purposes, as if executed by an individual owning such real estate," provided, that the written assent, etc., "shall first be filed," etc.

It is not provided that the mortgage shall be void if executed before the written assent is filed, or even given. The only effect which it is necessary to give the statute, in accordance with its intention, is that the mortgage shall not take effect as a valid instrument until after the filing of the assent. And I think that the assent required by the statute, even if executed after the execution of the mortgage, and filed after the recording of the mortgage, would render the mortgage valid and effectual from the time of the filing of the assent. And that the mortgage would take effect from that time, notwithstanding the omission to file the assent until after the execution and recording of the mortgage. It is not at all probable or necessary, to carry out the intention of the act, to believe that the legislature meant to make the validity of the mortgage depend upon which paper happened to be first deposited in the clerk's office. If this view is correct, it is of no consequence which paper was first executed or filed. But the finding of the justice at the Special Term, was, probably, technically correct and according to the legal presumption. It appears by the stipulation of facts that the assent was filed with the clerk of the county of Kings, on the fourth day of November. The clerk is not required to note the hour of the filing, and no proof was given to overthrow the presumption that it was filed at the earliest moment of the fourth of November, at which business could be transacted at the county clerk's office. The mortgage bearing date on the fourth day of November is presumed to have been made on that day, and not before, and as it appears from the clerk's certificate, which is required to specify the time when the mortgage was recorded, it was recorded, or left for record on the said fourth day of November, at fifteen minutes past three p. m. So that the legal presumption establishes what was possibly the fact, that the assent was filed before the mortgage was delivered to the clerk for record. The objection made to the validity of the second mortgage is, that the assent was not filed before the mortgage was executed. The assent to this mortgage is a more formal instrument than the one referring to the mortgage of November fourth, and the objection taken to this assent is, that it was not filed before the execution of the mortgage to which it refers. If the views herein expressed in considering the question as to the filing of the assent referring to the mort-

gage of November fourth are correct, they furnish an answer to the objection as to the filing of the assent to the making of the second mortgage. It is claimed that the taking of the first mortgage by the plaintiff was *ultra vires*, and that it is therefore void. It appears that at least a part of the amount secured by that mortgage was advanced by the plaintiff, the Sugar Company, to the Kings County Company, in payment for buildings in process of erection on the premises, the legal title to which was still in the plaintiff, but which it had contracted to sell to the Kings County Company. *Non constat*, but it was a part of the agreement between the two companies, when the Kings County Company agreed to purchase the premises, that the Sugar Company should advance a part of the money toward the erection of the buildings on the premises by the Kings County Company, and take security on the premises and buildings when erected for the whole amount, including both the price of the land and the amount advanced for building. The Sugar Company retained the legal title to the premises, including the buildings, until they received the mortgage of November four. Such an arrangement is not unusual. It is usually made to facilitate the sale of the ground, and as against this objection will be presumed to have been done by the plaintiff for that reason, and to have been necessary to and a part of the agreement whereby the Sugar Company was enabled to sell the land, and therefore to have been within the purview of its legitimate business. Mr. Ezra Tucker sets up in his answer an agreement on the part of the plaintiff to extend the time for the payment of the mortgage. The court, at Special Term, have found that no such agreement was made, and the finding is supported by the evidence.

The judgment is affirmed, with costs of the appeal to the respondent.

Present — TALCOTT and PRATT, JJ. BARNARD, P. J., not sitting.

Judgment affirmed, with costs.